UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

NICK L. LARRABEE,
    **Plaintiff,**
        2
Vs.                                        No. 05-2235

**PUBLIC SAFETY BUILDING and
PATRICK HARTSHORN,**
    **Defendant.**

## OPINION

Before the court are the defendant, Patrick Hartshorn's summary judgment motion [32] and the plaintiff's response thereto [41].

### Standard

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ..." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir.2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed.R.Civ.P.56(c) This burden can be satisfied by " 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc*., 23 F.3d 174, 178 (7th Cir.1994). Credibility questions "defeat summary judgment '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.' " *Outlaw*, 259 F.3d at 838, citing Advisory Committee Notes, 1963 Amendment to Fed.R.Civ.P. 56(e)(other citations omitted). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp*., 956 F.2d 1436, 1440 (7th Cir.1992).

### Background

The Plaintiff, Nick L. Larrabee brought this lawsuit against the Public Safety Building and Patrick Hartshorn. Because the plaintiff cannot sue a building, The Public Safety Building was terminated on January 4, 2006. Hartshorn is the only remaining defendant. Plaintiff alleges in this lawsuit that he was denied proper medical care at the Vermilion County Jail (hereinafter Jail), in violation of his constitutional rights. Specifically, Plaintiff alleges that the medical staff

at the Jail did not respond to his needs regarding high blood pressure, neck and shoulder pain and internal bleeding. Plaintiff brings a claim for money damages pursuant to 42 USC Section 1983 against Defendant Patrick Hartshorn, the Vermilion County Sheriff.

The Defendant argues that he is entitled to summary judgment because there is no evidence that Defendant was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff continuously received prescription medication for high blood pressure while he was detained at the Jail. Plaintiff was also treated by jail nurses and the jail doctor each time he complained of pain in his neck and shoulder. Further, Plaintiff did not address any medical requests to Defendant nor did Plaintiff ever speak with Defendant about his medical issues. Accordingly, Defendant Hartshorn asserts he is entitled to Summary judgment.

## Undisputed Material Facts

1. From April 21, 2005 until February 10, 2006, Plaintiff Nick Larrabee was a pretrial detainee at the Vermilion County Jail. He is currently incarcerated at the Centralia Correctional Center. (Larrabee Dep. pp. 4-5, Exhibit A, [34].
2. Defendant Patrick Hartshorn is the Vermilion County Sheriff and was at the relevant times of the Plaintiff's complaint.
3. Before entering Vermilion County Jail, Plaintiff suffered from high blood pressure and was taking Metoprolol, Thiamine and a multivitamin. (Id. at pp. 15-17.)
4. Plaintiff received all three medications while detained at the Jail. (Id. pp. 19-20; Inmate Medication Record, attached as Exhibit B [34]).
5. On August 5, 2005, Plaintiff submitted a medical request to see a nurse or doctor because his left side, arm and neck and been hurting a couple of weeks. (Ex. A, p. 23; Inmate Request Form dated August 5, 2005, Exhibit C [34]).
6. Plaintiff was examined by the jail doctor, Dr. Melvin Ehrhardt on August 6, 2005. Dr. Ehrhardt visually observed Plaintiff and determined that Plaintiff's neck exhibit no abnormalities; it was not swollen or red, and there was no asymmetry. Dr. Ehrhardt performed a range of motion test, which included asking Plaintiff to touch his chin to his chest, and to touch his chin to one shoulder and then the other shoulder. Plaintiff exhibit a full range of motion. (Ehrhardt Affidavit ¶¶ 1-2, attached as Exhibit D; Medical Charge Sheet dated August 6, 2005, attached as Exhibit E [34]).
7. Dr. Ehrhardt determined that an x-ray of Plaintiff's neck and shoulders was not medically necessary. Dr. Ehrhardt did, however, order an x-ray of Plaintiff's chest, after wheezing his lungs, which was to include the lower part of the cervical spine or the neck. The x-ray was performed the next day, August 7, 2005, and the results showed no significant change compared to Plaintiff's previous tests. (Exhig D, Erhardt Affidavit, ¶2; Diagnostic Imaging results dated August 7, 2005, attached as Exhibit F, [34]).
8. Based on the examination, Dr. Erhardt concluded that Plaintiff's aches and pains were a result of old age. Dr. Erhardt prescribed Motrin as a pain reliever and anti-inflammatory. (Ex. D, Ehrhardt Affidavit, ¶ 3 [33]).
9. Plaintiff was treated by Dr. Ehrhardt again on August 11, 2005, after complaining of left shoulder and neck pain. Dr. Ehrhardt prescribed Motrin for Plaintiff's pain. (Ex. A,

Larrabee Dep., p. 32; Plaintiff's letter, attached as Exhibit G; Medical Charge Sheet dated August 11, 2005, attached as Exhibit H [34].

10. On August 17, 2005, a jail nurse prescribed Ibuprofen for Plaintiff's pain and as an anti-inflammatory. (Ex. A, Larrabee Dep., p. 33; Medical Charge Sheet dated August 17, 2005, attached as Exhibit I [34]).

11. On August 22, 2005, Plaintiff submitted a medical request to see a nurse or doctor for pain in his left shoulder and neck. OnAugust24,2005,the jail nurse prescribed Ibuprofen for Plaintiff s pain and as an anti-inflammatory. (Ex. A, Larrabee Dep., pp. 33-34, 37; Inmate Request Form dated August 22,2005, attached herein as Ex. J; Medical Charge Sheet dated August 24,2005, attached herein as Ex. K [34]).

12. On August 29, 2005, Plaintiff submitted a medical request to see the doctor for pain in his neck and left side. Plaintiff also requested to speak with someone from Crosspoint because he was feeling depressed. (Ex. A, Larrabee Dep., pp. 38-39; Inmate Request Form dated August 29, 2005, attached herein as Ex. L [34]).

13. Plaintiff was provided mental health treatment and met with an employee from Crosspoint on August 30, 2005.  Plaintiff told her that he was depressed because of the charges he was facing - molestation.  Plaintiff stated that he was not suicidal and signed a no harm contract. (Ex. A, Larrabee Dep., pp. 40-43; Crosspoint Records dated August 30,2005, attached herein as Ex. M [34]).

14. On September 6 and 8, 2005, Plaintiff submitted requests to see a doctor or nurse because of the pain in his left side. He also requested information about mental health medication, The nurse treated Plaintiff the same day, and set up a second appointment with Crosspoint. (Ex. A, Larrabee Dep., pp. 45-46; Letter dated September 6, 2005, attached herein as Ex. N; Inmate Request Form dated September 8, 2005, attached herein as Ex. O [34]).

15. On September 14, 2005, Plaintiff wrote a letter to the nurse or doctor about getting treatment for the pain in his left side, arm, shoulder and neck. Plaintiff also requested an appointment with Crosspoint. Plaintiff was treated by Nurse Galloway on the same day, September 14, 2005. The nurse discussed stretching exercises with Plaintiff and Plaintiff told her he does the best he can. (Ex. A, Larrabee Dep., p. 46-49; Letter dated September 14, 2005, attached herein as Ex. P; Inmate Progress Notes dated September 14, 2005, attached herein as Ex. Q [34]).

16. Plaintiff was interviewed by a second employee from Crosspoint on September 15, 2005. On September 16, 2005, Nurse Galloway was informed by Crosspoint that Plaintiff was not eligible for their services, (Ex. A, Larrabee Dep., pp. 51-52; Crosspoint Records dated September 15, 2005, attached herein as Ex. R; Ex. Q [34]).

17. In an Inmate Request Form dated October 25, 2005 and a letter addressed to the nurse dated October 31, 2005, Plaintiff complained of dizziness as a result of high blood pressure, pain in his neck and shoulder and pain in his teeth. (Ex. A, Larrabee Dep., pp. 53-55; Inmate Request Form dated October 25, 2005, attached herein as Ex. S; Letter dated October 31, 2005, attached herein as Ex. T [34]).

18. Plaintiff was treated by the nurse the following day, November 1, 2005.  He was prescribed lbuprofen for pain and inflammation and an antibiotic for the abscess in his gums.  Plaintiff's blood pressure medication dosage was also increased.  (Ex. A, Larrabee

      Dep., pp. 54-58; Inmate Progress Notes dated November 1, 2005, attached herein as Ex. U; Medical Charge Sheet dated November 1, 2005, attached herein as Ex. V [34]).
19. On January 4, 2006, Plaintiff submitted a medical request wherein he stated that he was not able to move his back and that it was throbbing. The nurse prescribed lbuprofen for Plaintiff s pain and inflammation. (Ex. A, Larrabee Dep., pp. 61-62; Inmate Request Form dated January 4, 2006, attached herein as Ex. W; Medical Charge Sheet dated January 6, 2005 [sic], attached herein as Ex. X [34]).
20. Plaintiff did not speak with Defendant Hartshorn regarding his medical issues at any time while at the Vermilion County Jail. (Ex. A, Larrabee Dep., p. 67 [34]).
21. Since leaving the Vermilion County Jail, Plaintiff has not requested any medical care or treatment for the continued pain in his neck and shoulders. (Ex. A, Larrabee Dep., pp. 66, 70 [34]).

### Discussion and Conclusion of Law

Summary judgment is appropriate because the record shows that Defendant did not violate Plaintiff's constitutional rights. The Eighth Amendment's protection against cruel and unusual punishment shields an inmate from a prison official's deliberate indifference to a substantial risk of serious injury or medical need. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). This means that prison officials cannot intentionally deny or delay access to medical care. *Zentmyer v. Kendall Co.*, 220 F.3d 805, 810 (7th Cir. 2000). However, not every injury or deprivation will translate into a constitutional liability. *Henderson v. Sheahan*, 196 F.3d 839, 844 (7th Cir. 1999). The official's act or omission must result in the "denial of the minimal civilized measure of life's necessities." *Id*. At 845. Although the Eighth Amendment does not apply directly to pretrial detainees like Plaintiff, they are nonetheless afforded the same standard of protection under the Due Process Clause of the Fourteenth Amendment. *Id*.

To prevail on a constitutional claim for failure to provide medical care, a pretrial detainee must satisfy both an objective and subjective component. First, to satisfy the objective element, he must show that the deprivation alleged was a "sufficiently serious" injury or medical need. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). A serious injury or medical need is one that is so obvious that even a lay person would easily recognize that it requires a doctor's attention. *Chapman*, 241 F.3d at 845.

Second, as to the subjective element, the pretrial detainee must show that the defendant was deliberately indifferent to his medical needs. *Zentmyer*, 220 F.3d at 810. This requires a finding of more than mere negligence or even gross negligence. *Chapman*, 241 F.3d at 845. Deliberate indifference requires a showing that the official either wanted harm to come to Plaintiff or must have been completely unconcerned about Plaintiff's welfare in the face of substantial medical harm. *See McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This standard creates a "high hurdle" for litigants suing correctional officials. *Peate v. McCann*, 294 F3d 879, 882 (7th Cir. 2002).

Initially, as to his complaints regarding his neck and shoulder, summary judgment is appropriate in this case because Plaintiff has failed to introduce any evidence that his neck and shoulder problems – which the doctor determined were the result of aging – constituted a serious medical need within the meaning of the Eighth Amendment. *See Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (rejecting the notion that every ache, pain, or discomfort creates an Eighth Amendment claim). The doctor examining Plaintiff did not mandate a treatment plan apart from prescribing Motrin. *See Gibson v. Ramsey*, 99 C. 5315, 2004 WL 407025, *7 (N.D. Ill. Jan. 29, 2004) (back pain for which Plaintiff required Tylenol did not state a serious medical condition). Nor can Plaintiff's complaint qualify as a need "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See Chapman*, 241 F.3d at 845. Plaintiff, despite continued neck and should pain, has not sought medical treatment since leaving the Vermilion County Jail.

It is undisputed that Plaintiff continued to receive the medication for his high blood pressure during his detention at the Vermilion County jail. In fact, after complaining of dizziness, the medical staff treated Plaintiff immediately and increased his dosage of the blood pressure medication. Regarding the allegation of internal bleeding, the record contains absolutely no evidence of requests for treatment.

Even if this court were to conclude that Plaintiff did in fact establish objectively serious medical needs, summary judgment must be should be granted because the undisputed facts do not support an inference that Defendant was deliberately indifferent. Specifically, there is no evidence to support a finding that Defendant Hartshorn was deliberately indifferent by adopting a custom and practice of ineffective means of treatment. There is also no evidence that medical staff consciously disregarded Plaintiff's needs or that Defendant caused or participated in a medical deprivation.

Plaintiff filed this case against Defendant Hartshorn claiming that the medical staff at the jail provided him with inadequate medical care. Construing this claim liberally, as required for *pro se* plaintiffs, Plaintiff may be alleging a constitutional violation against Defendant in his individual capacity or in his official capacity, as the Vermilion County Sheriff.

If Plaintiff's claim is asserted against Defendant in his official capacity, it is essentially a claim against the entity of which he is an agent. *Boyce v. Moore*, 314 F.3d 884, 891 (7th Cir. 2002); *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991). In order to prevail in an official capacity claim, Plaintiff must show that the county's official policy or custom caused his injury. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary" to establish liability under Section 1983. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S. Ct. 2427, 2436 (1985). Here, Plaintiff has failed to establish the existence of a custom or practice that resulted in his being provided with ineffective medical care. Plaintiff has neither articulated a faulty custom or practice nor how such custom or practice deprives inmates of constitutional protections. Plaintiff has failed to offer any proof that a custom or practice caused constitutional injuries other than the one alleged in his complaint. This showing is required under *Tuttle* and

absent such proof, Defendant, in his official capacity, cannot be held liable under Section 1983.

In order to prevail in an individual capacity claim, Plaintiff must establish that Defendant cause the deprivation at issue. *Palmer v. Marion Co*., 327 F.3d 588, 594 (7th Cir. 2003). This requires a showing that Defendant was *personally* involved in the decision-making to provide Plaintiff with inadequate medical treatment. *See id*. (Emphasis added). Plaintiff fails to meet this high hurdle.

First, the record is devoid of evidence tending to show deliberate indifference. The record indicates that Plaintiff received medication for high blood pressure throughout the time he was detained at the Jail. The dosage of this medication was eventually increased on Plaintiff's request and the doctor's approval. The record also indicates that Plaintiff reported neck and shoulder pain on a number of occasions and that the medical staff treated Plaintiff on each of those occasions. Finally, the record indicates that Plaintiff did not make any medical requests for treatment for internal bleeding. By treating Plaintiff regularly between August, 2005 and his transfer in February, 2006, the medical staff at the Vermilion County Jail demonstrated they were not deliberately indifferent to Plaintiff's medical needs.

Dr. Ehrhardt examined Plaintiff on August 6, 2005, and determined that Plaintiff's aches and pains were the result of old age. While Plaintiff may have wanted further testing or an X-ray be taken, Dr. Ehrhardt determined that an X-ray was medically unnecessary. This difference of opinion does not translate into a constitutional violation. Disagreements over a course of treatment do not constitute deliberate indifference. *See Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir. 1996). Further, no ill will is evidence on the part of Dr. Ehrhardt as he ordered an x-ray of Plaintiff's chest after hearing a wheeze in his lungs.

Second, supervisors cannot be held vicariously liable for the actions of others. *Garvin v. Armstrong*, 236 F.3d 896, 899 (7th Cir. 2001). Therefore, Defendant can be held liable in his individual capacity only if he knew the injury was serious and condoned or turned a blind eye to the inadequate treatment. *See Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). The record shows that Defendant was not directly or personally involved in Plaintiff's medical care. It is undisputed that Plaintiff did not seek treatment from or otherwise discuss his medical problems with Defendant Hartshorn. Further, the record contains no evidence tending to show that Defendant knew of Plaintiff's medical needs from a secondary source. Overall, the record contains absolutely no evidence to show that Defendant knew of plaintiff's requests for treatment much less ignored them.

Plaintiff has failed to produce any evidence tending to show that Defendant Hartshorn adopted a custom and practice of providing ineffective means of treatment or that he was deliberately indifferent to Plaintiff's medical needs. Accordingly, Defendant's motion for summary judgment is granted.

**It is therefore ordered:**

1. **The defendant's motion for summary judgment is granted [32]. The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.**
2. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**Enter this   27th   day of March 2007.**

/s/ Michael P. McCuskey
_____
Michael P. McCuskey
United States District Judge